PRODUCTS, LLC. Mr. Scottson. Thank you, Your Honor. May it please the Court. The District Court ruling on infringement, claim construction, validity, willfulness, and enhancement damages are wrong and should be reversed. With respect to claim construction, the concept of the dynamic measurement of a battery dates back nearly 40 years to the 9-11 patent issued to Champlin in 1975. Since then, in nearly a dozen patents, in specification after specification, dynamic conductance has been defined to mean one of three symbiotic things. Measured using an AC signal, measured using an AC signal component, or measured using a time-bearing component other than DC. Okay, so your primary point that you want to focus on is the claim construction? Your Honor, I want to focus on two things if I could today. I recognize there are four issues I just identified. Okay. Claim construction and willfulness. Right, but we have to look at all those findings, effects, and conclusions of the law for purposes of a clear error review. Is that right? We don't have a clear error review on willfulness, Your Honor, for example, as BART Pharmaceutical indicates with respect to the threshold objective problem. But as to any underlying findings, effects? But there were no, just staying with willfulness for a second, Your Honor. The subjective problem was never addressed by the court. In fact, he expressly stated that he was not applying the subjective problem. So our view is there's no deference that should be afforded, even under the subjective problem. Yeah, is that really what he said, or did he say that I don't need to get to it because the objective unreasonable, the grounds upon which he found it to be so objectively unreasonable would also require the conclusion that it was subjectively reckless? That's not how I read it, Your Honor. He said expressly in A40, both in the text of his opinion and in Note 5, that he is not going to apply the subjective problem. Now he cites the Seagate and ILR, but those cases say something else. He do apply the subjective problem after the threshold of finding of objective recklessness has been made. Right, but the subjective problem is identified and Seagate is the new or should have known. And if you're objectively reckless, I think his point, the trial judge's point was that he's objectively reckless based on the specific conduct of the individual he identified and therefore he clearly should have known. I think that would have to be assumed. It was not stated. What was stated was the contrary, is that he was not applying the subjective problem. And as we know from recent decisions from this court, that the objective problem, the threshold objective inquiry goes up on the de novo review. And looking at the totality of the record as a whole, this is not the stuff of willfulness. The record below does not show willfulness. It shows actually a careful small company trying to develop products, confronted with an allegation from Medtronic, after Medtronic approached them, that there might be infringement of the 416 patent. But they don't identify any other patent. They researched it. The accused products practiced the 006 patent of BP Power. And in fact, the 006 patent that issued to BP Power was issued over the 416 patent, the threshold 911 patent and the 756 patent, which is the only patent in suit. You're saying that in practice, the 006, you said that repeatedly in your brief, but I don't see anything in the record that really establishes that. In fact, there was substantial testimony to the contrary, wasn't there? Your Honor, there was never testimony that it wasn't practiced in the 006. Was there testimony that it was? There was testimony through their expert witness that what BP Power and Argus' accused products were doing had the same result of what the dynamic conductance disclosure does in the Champlin series of patents. But that was it, the same result. There was no testimony that the product read on the claims of the 006, did it? But there was testimony. No, Your Honor, there wasn't. Your briefs specifically say here on appeal that you're saying that as if there was a finding or even evidence that somehow it was practicing that patent, but we don't have anything in the record to say that. Well, Mr. Benson, who is the patentee and the principal of BP Power, testified that the accused products practiced the 006 patent. And Mr. Calafes, who is the president of Argus Analyzers, he testified that he didn't think that they were infringing any of the McTronix patents because, among other reasons, they were practicing the 006 patent. There's no objective recklessness. This is what you want companies to do. You want them to understand the landscape of the patent. And by the way, the 756 patent was never disclosed to Argus and BP Power pre-suit. It was first brought to its attention after the litigation commenced by way of an amended complaint. That's how it came to our attention, not before that. But let me touch on claim construction if I could. As I began my presentation, I talked about the nearly 40 years of patent prosecution that discussed dynamic conductance, because that's not the inventive step of the patent suit, the 756 patent. What dynamics conductance is, is it's measured with using an AC signal or an AC signal component or a time-varying signal other than DC. Those are not words that I've taken from some form of extrinsic evidence, like the patentee has done here. But those are words that come from each and every embodiment of the 756 patent. It comes from inventor testimony in which he testified that by dynamic conductance it is obvious that it means measured using an AC point. And it even comes from Medtronic's own brief below at the Markman stage, where it refers to the AC component of a time-varying current that is used to determine the battery's dynamic conductance. But in that same brief, didn't they also say that the point is that it uses the AC component to measure the dynamic resistance, but that's merely a reference to the ability to think of pulsing time-varying signal as having both an AC and a DC component. That's in the same brief you're referring to. It is, Your Honor. We obviously have a disagreement as to what the proper claim construction can be, but it's instructive that that section Your Honor refers to, because that refers to the signal that's produced. A DC signal is drawn from the battery, and what's produced is a signal that has both AC and DC components. And the DC components bias up the AC. The circuitry, the invention, suppresses the DC and measures the AC component against the signal battery to arrive at a dynamic conductance. That's what their brief says, but they don't like the AC component aspect of it. In fact, they argue that an AC signal excludes the preferred embodiments, but it doesn't. If you look at each of the three preferred embodiments of the 756, it talks about an AC signal or an AC signal component or a time-varying signal other than DC. That's what they talk about for 40 years of patent prosecution. But what they do is they go beyond this intrinsic evidence, and they look to a dictionary definition for AC. They apply it, saying that, well, since AC reverses polarity and our disclosure does not reverse polarity, you can't have, it excludes the preferred embodiment. But we're not applying an AC, a dictionary definition. We're applying an AC component signal in the context of this body of work that's been developed in 12 or more patents. So I think our construction is the right thing. And when you apply the construction, any one of those three alternative constructions to the accused products, there's not infringement. And even if you apply their construction, delta V over delta I or delta I over delta V, there's no infringement either because the accused products measure current, the delta I. They measure current once, not twice. So even under what we believe is the faulty construction advanced by Medtronic and adopted by the district court, there's no infringement here. Now, Judge Romero, I just want to get back to your point. When we're looking at the universe of the issues here and arriving at rule for infringement, our claim construction is married to the intrinsic record. We don't step outside of it, except for the example I gave of the venture testimony that AC conductance means measured using AC formula. So at worst, we have a close issue on claim construction. Our infringement position is supple. Our invalidity position... So to the extent that the district court described it as faceless, that you think he was way off base? Respectfully, Your Honor, I do. You look at the decisions in the district court. I mean, that type of flamboyant language is throughout. It's baseless. Well, he's kind of known for flamboyant language. Right. But that doesn't mean he got it wrong. But it doesn't mean he has it right because he said that Medtronic's argument is highly persuasive and Torpedo's defendant's argument is. I wasn't the trial lawyer, Your Honor, but when I read this record, something went wrong. These are close questions at worst, and I think we're in the right on each one of them. But at the end of the day, it's not the stuff of lawful infringement. This is not objectively reckless conduct, what Argus and BP Power has done. And it's not... It doesn't fall within the subjective prong of Seagate Island. This is not the stuff of lawfulness. I see I'm in line. Rebuttal time. No, we'll save your rebuttal time, Mr. Scott. Mr. Wagner. May it please the court. I'd like to focus on the claim construction. I think that is a point which this case really turns around. And counsel mentioned that Medtronic has used the same construction for the last 40 years, and I'd like to go back 40 years. Dr. Champlin's 1975 paper, which explicitly defines dynamic conductance, he explicitly says G sub D, dynamic conductance, equals delta I over delta B. This construction that the court adopted is the same construction that the original inventor, the pioneer in this field, told the world back in 1975. And he didn't just say it in that paper back in 1975. He also said it in the very first patent, the 9-11 patent in 1975, where he said on page A-94 of the record that dynamic conductance is the initial slope of the plot of the terminal voltage versus load current. The initial slope. Slope is, remember from high school algebra, rise to run. Delta Y over delta X. In this case, with voltage and current, it's delta I over delta B. That is what everyone has understood dynamic conductance to mean. And I find it interesting that throughout this case there's been no evidence presented to contradict that, that one of ordinary skill in the art of somehow understanding dynamic conductance to mean something different. Mr. Wagner, I want to ask you a little bit about willfulness. Sure, certainly. The district judge went through it and found that defendants acted despite an objectively high likelihood that its actions constitute infringement. He didn't talk about the question of whether it was clear that the patent was valid. Weren't there real issues concerning that? The validity position was never developed or presented in terms of pre-suit. I think that's where his focus was. With respect to the validity issues, I have to respectfully disagree that there is an issue. I think this was a case that, well, you obviously have more experience than I in this, but a highly unusual circumstance where you had pioneering inventors, the experts in the field. This is who was involved here. The only prior art cited against them was their own art, things they wrote and not only wrote but used to market and develop products. They were intimately familiar with that 416 patent. You had the Patent Office who examined the 416. It was before it and signed off on as not being an invalidating reference. Finally, you had what I call the Sears story. You had a situation where these weren't inventors who just came up with the idea out of the blue. You're arguing the un-obviousness. Correct. We will ultimately decide yes or no. The question is whether at the time they took their actions it was so clear that the patent was valid. Again, I think there was nothing to suggest it wasn't. We had the presumption. Not even the close 416 patent? Again, I don't think that was close. The 416 was a subset of the 756. The 416 came up with the idea that we don't need to fully charge the battery. We can compensate by just knowing its voltage. We think that's a universal property of the battery. It turns out that's wrong. The 756 patent built on that and recognized that no, in fact, it depends on the type of battery you have. What was the testimony pre-suit about their investigation? Was it simply that they investigated and thought there was non-infringement? Or was their testimony pre-suit that one of the reasons they continued to arguably practice the patent was because they thought it was invalid? There was no invalidity presented at all. In fact, we took a deposition of Mr. Kaufhaus, the owner of Argus, and he had no invalidity positions. He was aware of none. So pre-suit, there was no invalidity one way or the other. So it all turned on this infringement argument. On this dynamic conduct. It's the one that, as you recognize, the lower court found to be totally empty of merit. And that was the only basis they had for believing that they did not infringe. And the basis was because of this claim construction, or was it because they think they don't take two measurements? I think those are intertwined. I think they claim to understand dynamic conductance as something that is different than what they do. And the two measurements, I think I want to go back for a second on that point. The claim construction does not require any particular mathematics. It's just the change in current divided by the change in voltage or vice versa for resistance. It's just the change. Well, they admit that their product, before it applies the current pulse, is drawing no current. So by definition, whatever current they draw during their pulse during the measurement is the change. By definition. There's no reason to subtract zero. And the district court, I think, amply recognized it. And he said A minus B is equal to A if B is zero. There's no need to do an explicit minus zero step in your software. Whatever current you apply is, by definition, the change. How do you respond to the fact that the trial judge did say in an order that he didn't have to look at the subjective promising case? I believe that was in the context of enhancement, not in the context of willfulness. That part of the brief, he has already determined that there's willfulness, and he's moving on to deciding whether he should enhance. And he said at that point, there was no need to, he cites the Eilor case, no need to address the subjective prongs. So I think it's in a different part of the opinion. He already had the foundational thing, the findings of fact and the conclusions of law that he adopted, set forth both prongs of CK, the objective and subjective, and the support for those. And he adopted those. And then he's moving on to whether he's going to enhance. And at that point, he said he didn't need to consider the subjective prong, which I think is correct, given the foundational finding of willfulness is all that is really necessary to support the enhancement. So I think he did consider the subjective prong, but that footnote addresses a different aspect of the case. Another point I'd like to raise is with respect to Medtronic's challenging, prior to suit, appellant's use of Medtronic's technology in only calling forth the 416 patent as opposed to the 756 patent, which is correct. The only patent that was identified pre-suit to appellants was the 416. But the non-infringement position is the same. There's nothing unique about the 756 versus the 416 in this respect. They both use dynamic conductance. The non-infringement position is identical in both cases. So I think that's really a distinction without a difference. Their non-identification of the 756 patent really didn't affect their behavior. And they then admitted that after being challenged by Medtronic, they went and discovered the 416 and the 756 patents and thoroughly studied both of them. So they were aware pre-suit of the 756 patent, had studied it carefully, had knowledge of their own products, they had knowledge of Medtronic's patents, they had knowledge of Medtronic's products that used those patents, and they also were aware that they were being accused of infringement. So pre-suit, they had everything they need to know to be on notice and be concerned about their actions, and they chose to ignore that. And their non-infringement position was found to be totally empty of merit. And I think that is willful conduct. Okay. Any more questions? Any more questions? Okay, thank you, Mr. Wagner. Thank you. Mr. Scott. Thank you, Your Honor. With respect to the question about whether the court adopted this objective prong, in his decision he makes clear at 839 that he's only applying the objective prong of Seagate with respect to willful infringement. And that continues to the top of 840. This decision is clearly based on the application of the threshold objective prong only, and it's determination by the court that under his reading of Seagate, this objective prong does not have to be considered. And that he carries forward that error with respect to the 285 analysis on attorney's fees, where there's a subjective prong to it as well, akin to the willfulness prong, and that's not applied either. And the damages in this case are the attorney's fees under 285, because Medtronic did not seek any damages at the time of trial. With respect to what was in Vargas and BP Powers' mind pre-suit, it's important to put it in some brief context. Medtronic's approach to BP Power, because it was interested in its technological know-how. When BP Power resisted that relationship, the president of Medtronic said, you may be infringing the 416 patent. The call would be back and forth at the time of trial, through email correspondence, was what other patents are you suggesting with your characteristic approach to us for some form of business relationship? And Medtronic refused to disclose any other. So what did RX and BP Power do? They looked at the Medtronic's patent portfolio, and it's an extensive one, and they made a determination that what they're doing is AC conductance testing, and what they're doing is DC or LPR conductance testing that's claimed in the 006 patent. And when they sued, they didn't sue on the 756, the only patent sued, they sued on the 416. The 756 was introduced into this case post-filing of the original complaint. With respect to validity, the disclosure in the 416 patent is that a different compensation occurs, applied to different battery types. Now, Mr. Champlin's testimony at trial was that that's a wrong disclosure, and nobody should, no one of ordinary skill in the art would rely on that wrong disclosure because he's the only one. And Argus and BP Power put forth the testimony of Dr. Severinsky, who testified that he was the one of ordinary skill in the art, and he would rely on it as different compensation occurs. But ultimately, there are very powerful secondary considerations involved here, right? Major customer seers wouldn't buy unless they upgraded the invention, which they finally did, and that's embodied in the patented issue, and they were charging much more than previous price, and that's pretty strong stuff in favor of validity. I disagree, because the secondary considerations don't come into play if the disclosure is in the 416 patent. If the only inventive step of the 756 patent is not dynamic conductance, the only inventive step is battery type input circuitry and correction circuitry to adjust for battery type. The battery type input circuitry they essentially gave up in their red brief, so that's not novel in the 756. And the correction circuitry is what Champlin disclosed in the 416. So those secondary considerations, I don't believe, come into effect at all. They had a 95% accuracy rate. They bumped it up by 1% using the technology disclosed in the 416. So we would ask this panel to reverse the Court's findings of infringement and willfulness and inferiority and adopt our clean constructions. Thank you, Mr. Scott and Mr. Wagner. We thank you for taking this submission.